AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>The Cellular Telephone Assigned Call Number<br>(614) 822-7973 | ) ) Case No. 2:20-mj-568<br>) )<br>) MAGISTRATE JUDGE JOLSON |

FILED
RICHARD W. NAGEL
CLERK OF COURT
2020 AUG 20 PM 1:47
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the  **Southern**  District of  **Ohio** , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841 | Distribution of Narcotics |
| 21 U.S.C. 843(b) | Use of a telephone facility to facilitate the commission of a felony |
| 21 U.S.C. 846 | Conspiracy to distribute and possess with intent to distribute narcotics |

The application is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Noah Bookman*
Applicant's signature

Noah Bookman, Special Agent, DEA
Printed name and title

Sworn to before me and signed in my presence.

Date: August 20, 2020

*Kimberly A. Jolson*
Kimberly A. Jolson
United States Magistrate Judge

City and state: Columbus, Ohio

## INTRODUCTION

I, Noah Bookman, (hereafter referred to as affiant) been duly sworn depose and state:

1. I am a Special Agent of the Drug Enforcement Administration (DEA), assigned to the Detroit Field Division, Columbus District Office. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 United States Code, Section 2516(1). During this time, your affiant has accumulated the following training and experience:

2. I graduated from the DEA Academy located in Quantico, Virginia in 2015. I received approximately 22 weeks of specialized narcotics related training. The training included controlled substances identification, narcotics related investigative techniques, interview and interrogation training, preparation of search warrants, tactical application of narcotics enforcement, surveillance and electronic monitoring techniques, and money laundering investigations.

3. As a DEA agent, I have participated in the execution of numerous search warrants at residences and businesses of narcotics traffickers, safe houses, crack houses, and have participated in numerous search warrants and investigations for drug related offenses.

4. As a DEA agent, I have participated in investigations targeting individuals and organizations trafficking heroin, cocaine, cocaine base ("crack"), marijuana, fentanyl, and its analogues, methamphetamine and other controlled substances as defined in 21 U.S.C. § 801. I know that these are controlled substances under 21 U.S.C. § 801.

5. During the course of my law enforcement career, I have had experience in debriefing defendants, interviewing participating witnesses, cooperating individuals, and other

persons who have personal knowledge and experience regarding the amassing, spending, conversion, transportation, distribution and concealment of records and proceeds of trafficking in controlled substances.

6. Before joining DEA, I was a police officer for approximately eight years, two of which as a narcotics officer primarily working narcotic cases. I have participated in numerous investigations involving narcotics trafficking.

7. The facts and information contained herein are based on my personal knowledge and experience, that of other law enforcement personnel, surveillance operations, and from persons with knowledge regarding relevant facts and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this investigation.

## PROBABLE CAUSE

1. I make this affidavit in support of an application for a search warrant under the Federal Rules of Criminal Procedure and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(614) 822-7973**, with Luis Gonzalez subscriber (the "**Target Device**"), whose service provider is Sprint / T-Mobile USA, Inc headquartered 4 Sylvan Way, Parsippany, New Jersey 07054. The **Target Device** is suspected to be utilized by a member of Alberto MIRA's Drug trafficking organization (DTO). The **Target Device** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this affidavit is being submitted for the limited purpose of seeking authorization for the execution of a search warrant, your Affiant has not set forth each and every fact learned during the course of this investigation. Your Affiant has set forth only those facts that your Affiant believes are necessary to establish the foundation for an order authorizing the requested search warrants.

3. In September of 2019, investigators established an investigation into the MIRA DTO. Investigators were able to purchase approximately two ounces of heroin from MIRA, aka "JUAN", by utilizing a confidential source, (hereinafter referred to as CS). Before and after the purchase, JUAN conducted multiple counter surveillance tactics to detect any law enforcement presence in the area. For example; before the meet with the CS, JUAN was observed driving through the adjacent apartment complex and appeared to be conducting surveillance for law enforcement. After the meet with JUAN, he was observed driving at a high rate of speed and making U-turns in the roadway. Investigators terminated the operation after the purchase due to the consistent counter surveillance on law enforcement and potentially being compromised.

4. In the months to come, investigators tried various law enforcement techniques trying to locate JUAN. JUAN contacted the CS several times informing him/her that law enforcement he been following him or were in the area. JUAN changed his telephone number, vehicle, and apartment numerous times to evade investigators.

5. In December 2019, investigators changed tactics while investigating JUAN. Investigators identified Crystal THOMAS as a member of the DTO and focused their efforts on THOMAS. Investigators identified THOMAS' telephone number as (614) 397-5857. Investigators noticed JUAN had been in frequent contact with THOMAS. Investigators learned that JUAN had been arrested by the Columbus Police Department for OVI.

6. In February 2020, investigators utilizing a CS were informed JUAN had been recently arrest and his twin brother "MARIO" was now in control of the operation. Investigators learned that MARIO did not speak very good English and used a female to translate the conversation when there was a language barrier. Investigators observed MARIO and the female arriving at THOMAS' residence on multiple occasions.

7. Investigators also identified Scott MILLER of Athens, Ohio as a customer of THOMAS'. Investigators observed MILLER traveling almost daily to THOMAS' residence and stay for a short period of time. In April 2020, after MILLER departed from THOMAS' residence in Columbus, Ohio, an Athens County Sheriff's Office Deputy conducted a traffic stop

on MILLER in Athens, Ohio. During the traffic stop, Deputies located and seized approximately 5 grams of heroin. MILLER told the deputies that he purchased the heroin in Columbus, Ohio. MILLER was released from the traffic stop. In the coming days and months, MILLER continued to be in frequent contact with THOMAS.

8. In mid-April 2020, investigators noticed MARIO's presence at THOMAS' residence had drastically decreased. While analyzing THOMAS' telephone records, investigators were unable to determine MARIO's new telephone number. Investigators observed a new telephone number, (614) 377-5381, having frequent contact with THOMAS. Investigators noticed THOMAS would contact (614) 377-5381 before MILLER would arrive at her residence. A short time after THOMAS contacted the (614) 377-5381, investigators would observe a male Hispanic (later identified as Victor LOPEZ) arrive at the residence and would only stay for a short period of time. Based on my training, experience, and knowledge of this activity, the manner in which these meets were conducted and the short duration are indicative of drug trafficking.

9. From April to June 2020, investigators observed LOPEZ arrive at THOMAS' residence nearly daily, if not multiple times a day. Investigators observed the (614) 377-5381 in contact with THOMAS before LOPEZ would arrive at the residence. Through an electronic surveillance platform, investigators observed LOPEZ exiting the rear door of THOMAS' residence and appeared to be placing currency into his pocket. Investigators applied for and were granted a Global Position System (GPS) Federal Search Warrant for telephone (614) 377-5381. When investigators received the data from the telephone company there was no GPS included. Investigators contacted the telephone company due to the lack of data. The telephone company advised that telephone number (614) 377-5381 was not connecting to their towers. This usually means the telephone number is outside of the United States. While analyzing the number (614) 377-5381 between March and July of 2020, investigators noticed (614) 377-5381 had been in contact with THOMAS' device 499 times.

10. In July of 2020, investigators applied for and were granted a Federal Warrant for a Title III on THOMAS' telephone number. Through the investigation it was determined THOMAS' role in the DTO is a "middle person". THOMAS only contacts SOS1 when a user is

ready to purchase the heroin. Investigators determined LOPEZ' role in the DTO is a "runner" for SOS1. LOPEZ would transport the heroin to the customer on behalf of SOS1. Investigators determined SOS1 role is a "dispatcher". SOS1 would receive calls from customers, the customer would place the narcotic order, then SOS1 would contact the "runner' to complete the narcotic order/transaction. Investigators intercepted multiple telephone conversation between THOMAS and the Source of Supply (SOS1) utilizing (614) 377-5381. For example, on July 10, 2020, THOMAS contacted the SOS1, utilizing (614) 377-5381 and below is the conversation:

| | |
|---|---|
| SOS1: | Hey |
| THOMAS: | Let me get two ounces. |
| SOS1: | Ounces? |
| THOMAS: | Two ounces, two ounces |
| SOS1: | Two ounces? |
| THOMAS: | Yes |
| SOS1: | Hi Victor. Two ounces? |
| THOMAS: | Two ounces and five grams |
| SOS1: | Okay. On my way. |
| THOMAS: | Okay, thank you |
| SOS1: | Thank you |
| THOMAS: | You're welcome baby |

The call was disconnected

11. The same day, investigators observed LOPEZ arrive at THOMAS' residence and stay for a short period of time. Based on my training, experience, and knowledge of this activity, the manner in which these meets were conducted and the short duration are indicative of drug trafficking. An Ohio State Highway Patrol Trooper conducted a traffic stop on the individual(s) who purchased the two ounces from THOMAS. During the traffic stop, troopers located and seized approximately two ounces of heroin.

12. On July 14, 2020, THOMAS was no longer contacting SOS1 using (614) 377-5381; However, THOMAS was contacting SOS1 using telephone number **Target Device** to place the heroin order. For example; On August 4, 2020, THOMAS contacted the SOS1,

2. In my training and experience, I have learned that Sprint / T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

3. Based on my training and experience, I know that Sprint / T-Mobile can collect E-911 Phase II data about the location of the **Target Device**, including by initiating a signal to determine the location of the Target Cell Phone on Sprint / T-Mobile's network or with such other reference points as may be reasonably available.

## AUTHORIZATION REQUEST

1. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to the Federal Rules of Criminal Procedure and 18 U.S.C. § 2703(c).

2. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice for 30 days. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Device** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18

U.S.C. § 3103a(b)(2).

3. I further request that the Court direct Sprint / T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint / T-Mobile. I also request that the Court direct Sprint / T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint / T-Mobile's services, including by initiating a signal to determine the location of the **Target Device** on Sprint / T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint / T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

4. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

5. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until January 31, 2021 or further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

6. Finally, for the reasons articulated above I also request that the Court issue an order pursuant to 18 U.S.C. § 2705(b) ordering Sprint / T-Mobile not to notify any other person of the existence of the warrant until July 31, 2020, or such other non-disclosure order is issued by the Court.

*Noah Bookman*

Noah Bookman

Special Agent, DEA

SUBSCRIBED and SWORN to before me this ___20th___ day of August, 2020. Time: ___1:05 pm___

_____
Kimberly A. Jolson
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular device assigned call number (614) 822-7973, with an unlisted subscriber. (The 'Target Device"), that is in custody or control of Sprint / T-Mobile USA, Inc, a wireless telephone service provider headquartered as 4 Sylvan Way, Parsippany, New Jersey 07054

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be Disclosed by the Provider

All information about the location of the Target Device described in Attachment A for a period of 30 days, during all times of day and night. "Information about the location of the Target Device" includes all available E– 911 Phase II data, GPS data, latitude – longitude data, and other precise location information, from the cellular telephone device in attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within possession, custody, or control of Sprint / T-Mobile USA, Inc, Sprint / T-Mobile is required to disclose the Location Information to the government. In addition, Sprint / T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information un-obstructively and with a minimum of interference with Sprint / T-Mobile's services, including by initiating the signal to determine the location of the Target Device on Sprint / T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint / T-Mobile for reasonable expenses incurred and furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. See 18 U.S.C. § 3103(a)(b)(2).

### II. Information to be seized by the government.

All information described above in Section I that constitutes evidence of violation of 21 U.S.C. §§ 841(a)(1) and 846 involving members of the Alberto MIRA drug trafficking organization known or unknown.